TOM LOFTUS, Chairperson Assembly Organization Committee
The Assembly Organization Committee has requested my opinion regarding the legality of the action of the Citizens Utility Board ("CUB") "to transform itself into a private, non-profit entity."
By chapter 72, Laws of 1979, the Legislature created chapter 199, Stats., the Citizens Utility Board Act ("CUB Act").
 The purpose of [the CUB Act] is to promote the health, welfare and prosperity of all the citizens of this state by insuring effective and democratic representation of individual farmers and other individual residential utility consumers before regulatory agencies, the Legislature and other public bodies and by providing for consumer education on utility service costs and on benefits and methods of energy conservation. Such purpose shall be deemed a statewide interest and not a private or special concern.
Sec. 199.02, Stats.
CUB was created as a non-profit "public body, corporate and politic." Sec. 199.04(1), Stats. Thus, as observed in an earlier opinion on the constitutionality of the CUB Act,[1] "CUB was not intended by the Legislature to be a corporation in the ordinary sense." As shorthand, CUB was referred to throughout the CUB Act as "the corporation." E.g., sec. 199.03(5), Stats. I do not conclude from this that the Legislature intended CUB to be a corporation. Rather, CUB is one of a number of special "separate entities designed to carry on a public purpose." State ex rel.Warren v. Nusbaum, 59 Wis.2d 391, 425, 208 N.W.2d 780
(1973).[2] As an entity possessing both governmental and corporate characteristics, CUB in many respects resembled a corporation.[3] In only two *Page 169 
respects, however, was CUB made subject to chapter 181, the nonstock corporation law. CUB was required to conduct its membership meetings as provided under sections 181.14 to 181.18 and 199.08 and CUB was subject to dissolution, under sections 181.50 to 181.65 and 199.17. It is CUB's exercise of the authority to dissolve under chapter 181, which is the subject of your request.
At a special meeting held April 26, 1986, the membership of CUB voted to dissolve. Articles of Dissolution were issued by the Secretary of State on April 28, 1986. On the same date, Articles of Incorporation were filed by three former CUB directors, forming a new non-profit, non-stock corporation known as Citizens Utility Board, Inc.
Although not entirely free from doubt, I have concluded, based on my own factual and legal investigation, that the dissolution of CUB and the incorporation of CUB, Inc., were legally accomplished.
Despite the fact that CUB was created by a special act of legislation "to promote public purposes, not private ones," 69 OP. Att'y Gen. at 156, CUB clearly was given the power to unilaterally dissolve. The CUB board of directors acted pursuant to statute in adopting a dissolution resolution and calling a special membership meeting to vote on the dissolution. Articles of Dissolution were properly filed with the Secretary of State, who promptly issued Articles of Dissolution, effecting the extinguishment of the corporation. At the same time, Articles of Incorporation were filed with the Secretary of State. In accordance with the dissolution statutes, CUB has transferred its assets and liabilities to CUB, Inc., and has notified its creditors accordingly.
The only concern I have over the legality of CUB's dissolution is whether CUB acted in good faith in taking this step. Under the common law, the decision to dissolve or not must be made in good faith. Oleck, Non-profit Corporations and Associations, section 226 (1956). I must presume that CUB acted in good faith because neither the CUB Act nor chapter 181 contains any limitation on the grounds for dissolution. In other words, as far as the statutes are concerned, CUB could dissolve for any reason. In the case of business corporations, a court of equity will upset a dissolution despite compliance with the statutes: *Page 170 
 [a]t the instance of minority stockholders where the dissolution is in bad faith and violates the rights of minority stockholders, or where it has been induced by undue influence or a result of fraud, or, it would seem, where the dissolution is not intended for the benefit of the corporation or in furtherance of its interests but merely to unjustly oppress the minority, or any of them, and cause a destruction or sacrifice of their pecuniary interests or holdings.
16 A, Fletcher Cyclopedia of the Law of Private Corporations, sec. 7966 (1979 rev. vol.). CUB, of course, had no stockholders. By analogy, however, members in the minority on the vote to dissolve might be found to have standing to challenge the dissolution on the ground that it was accomplished in violation of their rights. Clearly, a dissolution of CUB was prompted, at least in part, by a desire to avoid certain restrictions presented in the CUB Act.
In the Spring 1986 copy of the CUB newsletter, CUB president Thomas Lonsway told CUB members that the Legislature was not likely to amend the CUB Act to increase the classes of membership and that "only by reorganizing as a private non-profit organization could CUB broaden its membership base." Members were also told that CUB received none of the advantages of being a state agency (except for the right to include an enclosure in utility bills, which was being questioned in litigation) and asked "why keep [the tie to government] if we get no corresponding advantages." CUB was seen as having "essentially . . . many of the responsibilities of a government agency but none of the advantages." Obviously, therefore, a CUB dissolution was at least in part prompted by a desire to avoid CUB's statutory responsibilities.
One of those responsibilities, arguably, was to comply with the state's public records law. CUB had refused to divulge its membership list. In resulting litigation, CUB has taken the position that it was not generally subject to the public records law, but rather was subject to only the special public records provision of section 199.125. One might argue that dissolution was accomplished to avoid disclosing its membership list. Yet, other than the circumstance of the timing of the CUB dissolution, relative to the pendency of the membership list litigation and President Lonsway's statements in the CUB newsletter, nothing has come to my attention that would support a challenge to CUB's dissolution based on a bad faith motivation to avoid statutory responsibilities. *Page 171 
As far as I know no member has come forward to challenge the dissolution on these or any other grounds. I believe that no one else would have standing to interfere with the dissolution. Even with respect to members, however, an action to upset the dissolution, being in equity, would be affected by the doctrine of laches. The CUB board voted to dissolve and reorganize in March. No steps were taken to enjoin the dissolution and it was accomplished in April. According to President Lonsway's article in the CUB newsletter, dissolution had been discussed for "countless hours during the past two years." It is now September and no member has spoken up. It is likely, therefore, that no court would interfere with the dissolution and reorganization of CUB at this time.
BCL: ESM
[1] 69 Op. Att'y Gen. 153 (1980).
[2] For a summary and discussion of the characteristics of some or these entities see OAG 32-85, August 15, 1985.
[3] The CUB Act itself, of course in providing for bylaws and a board or directors among other things, endowed CUB with a number or familiar corporate characteristics. *Page 172